NAOMI JANE GRAY (SBN 230171)
HARVEY SISKIND LLP
Four Embarcadero Center, 39th Floor
San Francisco, California 94111
Telephone: (415) 354-0100
Facsimile: (415) 391-7124
ngray@harveysiskind.com

Attorneys for Plaintiff
ASHLEY CANDLER

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

SACRAMENTO DIVISION

| | |
|---|---|
| ASHLEY CANDLER, an individual,<br><br>Plaintiff,<br><br>v.<br><br>SHANNON CARTER, an individual,<br><br>Defendants | Case No. 13-cv-02072-LKK-CMK<br><br>***EX PARTE* APPLICATION FOR SERVICE BY PUBLICATION AND EXTENSION OF TIME**<br><br>**HONORABLE LAWRENCE K. KARLTON** |

Pursuant to Civil Local Rule 230(b) and the Court's Order dated January 7, 2014, Plaintiff Ashley Candler ("Candler") hereby respectfully applies *ex parte* for an order permitting her to serve process on Defendant Shannon Carter ("Defendant" or "Carter") by publication in accordance with Fed. R. Civ. P. 4(e)(1) and Cal. Code Civ. Proc. §415.50.

This Application is based on Candler's Complaint filed in this action, the annexed Memorandum of Points and Authorities, the Declaration of Ashley Candler, the Declaration of Naomi Jane Gray, the Declaration of Kelly Mattmuller, the Declaration of Jeff Lancaster, the Declaration of Non-Service of Christina M. Robertson, the Supplemental Declaration of Non-

-1-

EX PARTE APPLICATION FOR SERVICE BY PUBLICATION & EXTENSION OF TIME
Case No: 13-cv-02072-LKK-CMK

Service of Christina M. Robertson, the Declaration of Non-Service of Roger Clemons, and the records and files in this action.

                                                      Respectfully submitted,

Dated: February 21, 2014                     HARVEY SISKIND LLP
                                                      NAOMI JANE GRAY


By: _____/ s /_____
       Naomi Jane Gray
       Attorneys for Plaintiff
       ASHLEY CANDLER

-2-

EX PARTE APPLICATION FOR SERVICE BY PUBLICATION & EXTENSION OF TIME
Case No: 13-cv-02072-LKK-CMK

## **MEMORANDUM OF POINTS AND AUTHORITIES**

### **STATEMENT OF FACTS**

Candler Creates the Video.

Plaintiff Ashley Candler ("Candler") is the mother of a young son. (Declaration of Ashley Candler in Support of *Ex Parte* Application for Service by Publication and Extension of Time ("Candler Decl.") ¶ 2.) In or around December, 2010, Candler created a video entitled "Bath Time Fun" (the "Video"). (*Id.*) The Video displays her son, then a toddler, in the bathtub, teasing the family dachshund with a bath toy. (*Id.*) The dachshund repeatedly jumps for the toy and misses, causing Candler's son to laugh adorably. (*Id.*) The Video lasts approximately one minute. (*Id.*) Candler owns U.S. Copyright Registration No. PA 1829720 for the video. (*Id.* ¶ 3.)

Defendant Infringes the Video.

On January 12, 2011, Candler posted the Video to YouTube so that friends and family could view it. (Candler Decl. ¶ 4.) The very next day, on January 13, 2011, Defendant copied the Video to her publicly available YouTube channel, sweetfacesjc. (*Id.*) In a caption to the Video, Defendant claimed that the Video showed "my nephew cracking up while teasing the dog with his toy. Original content taken by me with my Droid phone. I own all content copyrights to this video." (Candler Decl. ¶ 5 and Exh. A thereto.) These statements were false.

The Video quickly went viral. By the time Candler filed the Complaint in this action, the Video had been viewed over 70 *million* times. (Declaration of Naomi Jane Gray in Support of *Ex Parte* Application For Service By Publication and Extension of Time ("Gray Decl.") ¶ 10 and Exh. D thereto.)

In addition, Defendant has apparently "monetized" the video by authorizing YouTube to insert advertisements into the video that play each time the video is clicked. (Candler Decl. ¶ 6.) Defendant is paid each time a viewer watches the video with the advertisements. (*Id.*)

Defendant has also apparently licensed "Bath Time Fun" to third parties, and/or encouraged third parties to link to "Bath Time Fun" or copy "Bath Time Fun" to third party websites. (Candler Decl. ¶ 7.) In addition to YouTube, "Bath Time Fun" has appeared on such websites as www.mashable.com, www.cafemom.com, and others apparently hosted around the world, all

1  without Candler's authorization or knowledge. (*Id.*)  Some of these third-party websites, such as www.mashable.com, link directly to "Bath Time Fun" as it appears on Defendant's YouTube channel. (*Id.*)

Candler Attempts to Resolve the Dispute Without Resort to Litigation.

On May 8, 2013, Candler, through her attorneys, served a Digital Millennium Copyright Act ("DMCA") takedown notice on YouTube pursuant to 17 U.S.C. § 512(c)(3).  YouTube disabled access to the Video on the sweetfacesjc channel on May 9, 2013. (Candler Decl. ¶ 8; Gray Decl. ¶ 2.)

Defendant served a DMCA counternotice (the "Counternotice") pursuant to 17 U.S.C. §512(g)(3) on May 13, 2013. (Candler Decl. ¶ 9; Gray Decl. ¶ 3 and Exh. A thereto.)  In the Counternotice, Defendant swore under penalty of perjury that she had a "good faith belief" that Candler's video was removed from Defendant's YouTube "due to a mistake or misidentification of the material to be removed or disabled."  (Candler Decl. ¶ 9; Gray Decl. ¶ 3 and Exh. A thereto.)  This statement was false. (Candler Decl. ¶ 9.)  Defendant could not have had such a good faith belief, as she did not create the video and owns no rights in it.

In the Counternotice, Defendant also explicitly consented to the jurisdiction of the Federal District Court for the district in which her address was located.  17 U.S.C. § 512(g)(3); *see also* Gray Decl. Exh A.  Defendant identified her address as a Post Office box in Bakersfield, California. (Gray Decl. Exh. A.)

After YouTube forwarded the Counternotice to Candler's counsel, counsel attempted to contact Defendant by sending Defendant a letter by certified U.S. mail, return receipt requested, to the Bakersfield Post Office box address that Defendant provided in the Counternotice.  The Post Office returned the letter to Candler's counsel, bearing the notation "Refused." (Gray Decl. ¶ 5 and Exh. B thereto.)  When Candler's counsel contacted the Post Office to ask what the notation meant, a Post Office employee informed counsel that Defendant had seen the letter in her box, but "didn't want it." (Gray Decl. ¶ 6.)

Candler's counsel also attempted to contact Defendant by telephone, leaving two voicemail messages for Defendant on the voicemail associated with the telephone number that Defendant

-4-

provided in the Counternotice. (*Id.* ¶ 7.) Finally, Candler's counsel sent Defendant a letter by email to the email address that Defendant identified as belonging to her in the Counternotice. (*Id.* ¶ 8 and Exh. C thereto.) Candler's counsel later learned from a third party who sought to license the Video from Defendant that the third party exchanged correspondence with Defendant through the same email address. (*Id.* ¶ 8.) Defendant never responded to any of these communications. (*Id.* ¶ 9.)

<u>Defendant Goes Underground After Candler Files Suit.</u>

Faced with Defendant's continued flagrant copyright infringement, refusal to remove the Video from her YouTube channel and refusal to respond to Candler's attempts to communicate, Candler filed this action for copyright infringement, contributory copyright infringement and misrepresentation on October 7, 2013. As of October 7, 2013, the Video was still on Defendant's YouTube channel and had been viewed over 70 million times. (Gray Decl. ¶ 10 and Exh. D thereto.) Within days of the filing of the Complaint, Defendant removed the Video from her YouTube channel; deleted or disabled access to her Facebook page; and changed the location information on her LinkedIn profile from Avila Beach, California to "the Greater Los Angeles area." (Gray Decl. ¶ 11.)

<u>Candler's Efforts to Locate Defendant.</u>

Candler undertook extensive efforts to locate and serve Defendant with process, retaining the services of a private investigator; scouring the Internet, including social media sites and publicly available paid databases; sending waivers of service to Post Office boxes in two different states; and retaining process servers to attempt service at four separate physical addresses in two states. (Gray Decl. ¶ 12.)

Candler retained the services of a private investigator to locate Defendant. (Gray Decl. ¶ 13; Declaration of Kelly Mattmuller in Support of *Ex Parte* Application For Service By Publication and Extension of Time ("Mattmuller Decl.") ¶ 2.) The investigator initially identified three "probable current addresses" for Defendant (in addition to the Bakersfield Post Office box address): one at 1720 Tonini Drive, Apartment 100, San Luis Obispo, California; one at 571 Newport Avenue, Grover Beach, California; and one at 727 Bell Road, Antioch, Tennessee. (Mattmuller Decl. ¶ 3; Gray Decl. ¶ 13.)

-5-

Candler's counsel also engaged in extensive online research in an effort to locate Defendant, running numerous searches using Google and other search engines, and searching various publicly available paid databases. (Gray Decl. ¶ 14.) Candler's counsel's determined efforts uncovered, among other things, a LinkedIn profile associated with Defendant. (*Id.*) When Candler's counsel first viewed Defendant's LinkedIn profile, it identified Defendant as residing in Avila Beach, California, a community adjacent to San Luis Obispo. (*Id.*)

At the time Candler served her DMCA takedown notice, Defendant's YouTube channel, sweetfacesjc, provided a link to her Facebook profile. (Gray Decl. ¶ 15.) A photograph of a beach scene posted on Defendant's Facebook timeline in mid-2013 was captioned, "our Saturday morning usual," and tagged to Avila Beach, California. (*Id.*) Defendant's Facebook profile stated that Defendant was "in a relationship" with an individual named Kimmy Carter ("Kimmy"). (*Id.*; Mattmuller Decl. ¶ 4.) Following the United States Supreme Court's DOMA opinion in the summer of 2013, Defendant posted on her Facebook timeline, "I'm getting MARRIED!!!!" (Gray Decl. ¶ 15.) Defendant also posted a photograph of herself with her arm around another woman. (*Id.*) Kimmy was included among Carter's Facebook friends, and Candler's counsel was able to view Kimmy's Facebook page by clicking on her name in Defendant's list of Facebook friends. (*Id.*)

Candler's counsel also discovered and viewed Kimmy's LinkedIn profile. (Gray Decl. ¶ 16.) That profile indicated that she was the manager of the de Tolosa Ranch Apartment Community ("de Tolosa Ranch") in San Luis Obispo, California. (*Id.*) Candler's counsel then viewed the webpage for the de Tolosa Ranch, www.detolosaranch.com. (*Id.*) The website listed a physical address for de Tolosa Ranch of 1704 Tonini Drive, San Luis Obispo, California, and identified "Kim Carter" as the Assistant Community Manager.[1] (*Id.*) Candler's counsel reviewed publicly available satellite photos of de Tolosa Ranch that showed that the complex includes several buildings spread over a few blocks. (*Id.*)

The de Tolosa Ranch website identified an additional employee, a Cheryl DeLaby, as the

---

[1] As of the time of this writing, the de Tolosa Ranch website continues to identify "Kim Carter" as its Assistant Community Manager. (Gray Decl. ¶ 16 n.1.)

1  Leasing Consultant. (Gray Decl. ¶ 17.) Candler's counsel telephoned the de Tolosa Ranch office
2  and spoke with a woman who answered the phone and identified herself as "Cheryl." (*Id.*)
3  Candler's counsel asked to speak with Shannon Carter. (*Id.*) Cheryl asked, "Do you mean Kim
4  Carter?" (*Id.*) Candler's counsel responded that she understood that Shannon Carter lived at de
5  Tolosa Ranch and was trying to reach her. (*Id.*) Cheryl stated, "Shannon Carter is a resident," but
6  that Candler's counsel had reached the office and not Defendant's apartment. (*Id.*) Cheryl would not
7  provide any further information about Defendant. (*Id.*)

<u>Candler Attempts to Serve Defendant in California.</u>

Candler sent a waiver of service, by certified mail, to the Bakersfield Post Office address that Defendant identified as her address in the Counternotice. (Gray Decl. ¶ 18.) The waiver was returned, unopened, with a notation indicating that Defendant had directed that mail sent to the Bakersfield Post Office box address be forwarded to a Post Office box in Lebanon, Tennessee. (*Id.* and Exh. D thereto.)

Candler also instructed a process server to attempt to serve Defendant personally at the Grover Beach, California address. (Christina M. Robertson Declaration of Non-Service ("Robertson Decl.") p. 2.) The residents of that address informed the process server that Defendant did not live there, and that they did not know Defendant. (*Id.*)

Based on the investigator's association of the 1720 Tonini Drive address with Defendant, and the additional evidence linking Defendant to the San Luis Obispo area generally and Kim Carter and de Tolosa Ranch specifically, Candler instructed a process server to attempt to serve process on Defendant at 1720 Tonini Drive, apt. 100. Several attempts were unsuccessful, and the process server was informed that the residents of the apartment had recently moved. (Robertson Decl. p. 1.)

The process server submitted a request to the Post Office to determine if Defendant had arranged to forward her mail from 1720 Tonini Drive to another address. (Declaration of Jeff Lancaster in Support of *Ex Parte* Application for Service By Publication and Extension of Time ("Lancaster Decl.") ¶ 4.) The Post Office responded that Defendant was forwarding her mail from 1720 Tonini Drive to the same Post Office box in Lebanon, Tennessee where Defendant was directing her mail be forwarded from the Bakersfield Post Office box. (Lancaster Decl. ¶ 4 and Exh.

-7-

1  A thereto.)

2  The process server also performed a "skip trace" relating to Defendant. ("Lancaster Decl ¶ 3.) This indicated that Defendant was reporting her current address to her credit agencies as a different apartment in the de Tolosa Ranch complex, specifically, 1604 Tonini Drive, apt. 3. (*Id.*) Candler's private investigator also uncovered information linking Carter with this address. (Mattmuller Decl. ¶ 6.)

3  Accordingly, Candler attempted to serve Defendant personally at the 1604 Tonini Drive address. (Robertson Decl. p. 2.) After several service attempts, the process server advised that the residence in question was occupied; an individual was at home during service attempts; the individual approached the peephole from the other side of the door when the process server knocked or rang the doorbell; but the individual would not answer the door. (*Id.*) The process server also noted that dogs could be heard inside the apartment. (*Id.*) Defendant's YouTube channel and Facebook page included references, video and photographs of a teacup chihuaua referred to as "Frannie Mojo Mouse Carter." (Gray Decl. ¶ 10.) The process server concluded that Defendant was avoiding service of process. (Robertson Decl. p. 2.)

4  While simultaneously attempting to serve process personally in California, Candler also sent multiple waivers of service to the various potential addresses associated with Defendant. In addition to sending the waiver of service to the Bakersfield Post Office Box, Candler sent a waiver of service to the 1630 Tonini Drive address. (Gray Decl. ¶ 22.) Defendant, however, had apparently forwarded her mail from that address to the same Post Office box in Lebanon, Tennessee, where she was forwarding her mail from the 1720 Tonini Drive address and the Bakersfield Post Office box. (*Id.*)

5  When Candler's counsel discovered, by checking the tracking number with the Post Office, that the waiver sent to 1630 Tonini Drive had been forwarded, she contacted the Lebanon, Tennessee Post Office to inquire about the status of delivery. (*Id.* ¶ 23.) By that time – approximately a month after having sent the waiver – the waiver was on its way back to Candler's counsel, marked "Unclaimed," as Defendant had failed to collect it from the Post Office Box. (*Id.* and Exh. F thereto.) During two separate telephone calls with two separate Post Office employees,

-8-

the Post Office confirmed that (1) the box in question was registered to Shannon Carter; and (2) mail was regularly being retrieved from the box. (*Id.* ¶ 24.) One postal employee stated that, based on the age of the mail in the box on the date of counsel's telephone call, mail was being retrieved regularly, as the oldest mail was three days old. (*Id* ¶ 24.) The employee confirmed that the waiver was likely in the box when the box was checked by its owner, but the owner did not collect the waiver. (*Id.*)

Candler's counsel also sent a waiver of service directly to the Lebanon Post Office box. (Gray Decl. ¶ 25.) That waiver was returned on February 18, 2014, with the indication "Unclaimed." (*Id.* and Exh. G thereto.)

Candler's process server obtained the physical address associated with the Lebanon Post Office box, a trailer park located at 1639 Murfreesboro Road, # 130, Lebanon, Tennessee. (Lancaster Decl. ¶ 5 and Exh. B thereto.) Candler engaged a process server to attempt to personally serve Defendant at that physical address. (Declaration of Non-Service By Roger Clemons "Clemons Decl.") p. 1.) The property manager told the process server that they did not know Defendant, and the individual residing at the address has been there for four years. (*Id.*) The resident at the address informed the process server that Defendant did not live there, and disavowed any knowledge of Defendant. (*Id.*)

Candler's counsel then asked the private investigator to do additional research to attempt to confirm Defendant's physical address. The investigator confirmed that the 1630 Tonini Drive address was associated with Defendant and Kimmy, and also discovered the telephone number associated with that address. (Mattmuller Decl. ¶¶ 6-8.) When the investigator called the number, the answering machine message stated, "Hey, you've reached Kim, Shannon, and Frannie Carter. Please leave a message, and we'll call you back." (Mattmuller Decl. ¶ 10.)

Finally, Candler's California process server conducted a stakeout of Defendant's property in an additional attempt to serve process personally on Carter or, alternatively, to effect substituted service. The process server visited Defendant's property on three separate occasions, remaining for at least 90 minutes on at least one of those occasions. (Supplemental Declaration of Non-Service of Christina M. Robertson ("Robertson Supp. Decl.") p.1.) The process server reported that she did

EX PARTE APPLICATION FOR SERVICE BY PUBLICATION & EXTENSION OF TIME
Case No: 13-cv-02072-LKK-CMK

not see anyone enter or leave the apartment. (*Id.*)  A person was visible inside the apartment, but refused to answer the door. (*Id.*)

Defendant is plainly aware of this lawsuit and avoiding service.  Although evidence strongly suggests that Defendant is living at the 1604 Tonini Drive address in San Luis Obispo, California, she has forwarded her mail to a Tennessee Post Office Box.  No one will answer the door at the 1604 Tonini Drive address, so Candler cannot confirm with certainty that Defendant is there, nor can Candler effect substituted service at that address.  Candler cannot serve Defendant by mail at the Lebanon, Tennessee Post Office box, because Defendant will not collect mail from Candler's counsel, and thus Candler cannot obtain a certified receipt showing delivery.  Accordingly, Candler seeks an order from the Court permitting her to serve process by publication.

## ARGUMENT

### I.   THE COURT SHOULD ALLOW SERVICE BY PUBLICATION

A.   <u>Defendant Cannot Be Served With Reasonable Diligence</u>.

Rule 4 of the Federal Rules of Civil Procedure provide that service of process may be made in any manner consistent with state law.  Fed. R. Civ. P. 4(e)(1).  Section 415.50 of the California Code of Civil Procedure provides, *inter alia*, that a summons may be served by publication if it appears that "the party to be served cannot with reasonable diligence be served in another manner specified in this article."  Cal. Civ. Proc. Code § 415.50; *see also Butler v. McKey*, 138 F.2d 373, 375 (9th Cir. 1943) (citing predecessor provision to § 415.50); *Bradford v. McAvoy,* 99 Cal. 324, 325 (1893) (same); *Miller v. Super. Ct.,* 195 Cal. App. 2d 779, 782-83 (1961) (same).  The "facts showing exactly what means were taken in the exercise of due diligence must be set forth in the affidavit" in support of the motion for service by publication.  *Butler,* 138 F.2d at 375.

In *Butler*, the Ninth Circuit upheld a default judgment obtained after the District Court granted the plaintiff permission to serve process on the defendant by publication.  The plaintiff's affidavit in support of the application to serve by publication averred that three different U.S. marshals had attempted to serve process on the defendant on different dates, and had been unable to locate her.  *Butler,* 138 F.2d at 374-75.  The affidavit "allege[d] that affiant and said plaintiffs' attorneys have made a diligent search for said defendant and have made inquiries of each and every

-10-

person whom they could expect, or had any reason to believe they would receive, information as to the whereabouts of said defendant." The Ninth Circuit found that these sworn allegations "adequately support[ed] the order of publication of summons" upon the defendant. *Butler*, 138 F.2d at 376.

Similarly, in *Bradford,* the defendant resided in the city and county of San Francisco, and kept an office in the city. *Bradford,* 99 Cal. at 325. After suit was filed, however, the plaintiff could not locate him, despite making inquiries at the defendant's office and "of various persons who knew him and would be likely to know of his whereabouts." *Id.* at 326. The plaintiff employed four different process servers to attempt to serve the defendant personally. *Id.* None succeeded. *Id.* The Supreme Court found that the plaintiff had made a "continued and constant effort . . . to secure personal service of the summons upon defendant," which was sufficient to support the order for publication. *Id.*

In *Miller*, the plaintiff employed a private investigator to locate the defendant. The investigator could not locate the defendant despite making inquiries, including of defendant's roommate. *Miller*, 195 Cal. App. 2d at 784. The plaintiff inquired at defendant's workplace and was told that defendant had quit the job. *Id.* at 783. The court found these efforts sufficient to support service by publication, reasoning:

> A person who deliberately conceals himself to evade service of process is scarcely in a position to complain overmuch of unfairness in subsitutive methods of notification enacted by the Legislature to cope with such situations. When it satisfactorily appears that a defendant by his own design successfully has secreted himself from the process server and thus thwarted personal service, it would indeed be anomalous to heed an assertion that he had been denied notice and an opportunity to be heard.

*Miller,* 195 Cal. App. 2d at 786; *see also Hayes v Risk*, 255 Cal. App. 2d 613, 627 (Cal. Ct. App. 1967) (same).

Here, Candler has undertaken exhaustive efforts to locate Defendant. Candler has sent waivers of service to two Post Office box addresses in two separate states and one to a physical address in California, and has attempted personal service on four physical addresses associated with Defendant – three in California and one in Tennessee. (Gray Decl. ¶¶ 18-28; Robertson Decl. pp. 1-2; Robertson Supp. Decl. p. 1; Mattmuller Decl. ¶¶ 3-6; Clemons Decl. p. 1; Lancaster Decl. ¶¶ 2-

-11-

6.) Candler retained a private investigator who made thorough efforts to pin down Defendant's location at two separate points in time. (Gray Decl. ¶¶ 13, 27; Mattmuller Decl. ¶¶ 2-10.) Candler's counsel spent countless hours conducting Internet searches and reviewing Defendant's known social media profiles. (Gray Decl. ¶ 12.) Candler's counsel also searched various public databases for information that would lead to Defendant's location. (Gray Decl. ¶ 12.) Finally, Candler's counsel attempted to reach Defendant by email and telephone using contact information that Defendant herself provided. (Gray Decl. ¶¶ 5-9.)

It is obvious that Defendant is evading service. Defendant served a DMCA counternotice that required YouTube to restore access to the infringing Video on Defendant's YouTube channel. (Gray Decl. ¶ 3 and Exh. A thereto.) She kept it there and avoided Candler's attempts to reach her – using contact information provided by Defendant herself – for months. (Gray Decl. ¶¶ 5-9, 11.) Within days of the filing of this lawsuit, however, Defendant removed the Video from her YouTube channel, deleted or disabled access to her Facebook profile, and altered the location information identified on her LinkedIn profile. (Gray Decl. ¶¶ 10-11.) Defendant has studiously avoided Candler's attempts to contact her, even though Defendant swore under penalty of perjury that she would accept service of process in the Counternotice. These efforts far exceed the ones undertaken by the plaintiffs in *Butler*, *Bradford* and *Miller*.

Candler has been unable to locate Defendant despite Herculean efforts. Candler cannot effect service on Defendant by any means other than publication. She cannot serve Defendant personally, because she has been unable to find her. She cannot effect substitute service on Defendant, because no one will answer the door at the 1604 Tonini Drive address. She cannot serve by mail on the Tennessee Post Office box pursuant to Cal. Civ. Code §§ 415.30-415.40, because Defendant will not accept delivery of mail from Candler's counsel, and therefore Candler cannot receive the return receipt that is required in order to effect service. The Court should grant Candler's application.

B.   <u>Candler has properly alleged three causes of action against Defendant.</u>

In order to obtain permission to serve process by publication, Section 415.50 also requires Candler to show, in pertinent part, that a "cause of action exists against the party upon whom service

-12-

is to be made. . ." Cal. Civ. Code § 415.50(a)(1). Thus, a plaintiff must "provide independent evidentiary support, in the form of a sworn statement of facts, for the existence of a cause of action" against the defendant. *Rose v. Seamless Financial Corp.*, 2013 U.S. Dist. LEXIS 42940, at *8-9 (S.D. Cal. Mar. 26, 2013) (conclusory statements made on information and belief insufficient); *Harris v. Cavasso*, 68 Cal. App. 3d 723, 726 (Cal. Ct. App. 1977) (complaint verified by counsel on information and belief insufficient).

Candler has submitted a declaration affirming facts that support a cause of action for copyright infringement, contributory copyright infringement, and misrepresentation. In order to state a claim for copyright infringement, the plaintiff must allege (1) ownership of the copyright in the work in question; and (2) copying by the defendant. *Three Boys Music v. Bolton*, 212 F.3d 477, 481 (9th Cir. 2000). "Absent direct evidence of copying, proof of infringement involves fact-based showings that the defendant had 'access' to the plaintiff's work and that the two works are 'substantially similar.'" *Id.* A copyright registration is *prima facie* evidence of ownership. 17 U.S.C. §410(c); *see also United Fabrics Int'l, Inc. v. C&J Wear, Inc.*, 630 F.3d 1255, 1257 (9th Cir. 2011).

Candler's declaration affirms that she authored the Video, and she has submitted a copyright registration certificate that constitutes *prima facie* evidence of her ownership of copyright in the Video. (Candler Decl. ¶¶ 2-3.) Defendant had access to the Video because Candler posted it to her publicly available YouTube page. (*Id.* ¶ 4.) Candler's declaration also affirms that Defendant displayed the Video without Candler's authorization on Defendant's YouTube channel, and submits true and correct copies of Defendant's YouTube channel showing a screen shot of the Video. (*Id.* and Exh. A thereto.) This is more than sufficient to state a cause of action for copyright infringement.

In order to state a claim for contributory copyright infringement, a plaintiff must allege (1) direct infringement by a third party; (2) knowledge by the defendant of the infringing activity; and (3) material contribution by the defendant to the infringing activity. *Fonovisa, Inc. v. Cherry Auction, Inc.*, 76 F.3d 259, 264 (9th Cir. 1996). Candler's declaration alleges facts supporting a claim for contributory copyright infringement. Candler alleges that Defendant displayed the Video

-13-

on her YouTube channel without authorization and licensed it to third parties despite knowing that Defendant had no rights in the Video. (Candler Decl. ¶¶ 4, 6-7.)

Section 512(f) of the Copyright Act provides, "Any person who knowingly materially misrepresents under this section . . . that material or activity was removed or disabled by mistake or misidentification, shall be liable for any damages, including costs and attorneys' fees, incurred by any copyright owner . . . who is injured by such misrepresentation . . ." 17 U.S.C. § 512(f). Candler has properly stated a claim for misrepresentation because she has alleged that Defendant knowingly and materially misrepresented that Defendant owner the Video, that this representation was false, and that Candler has suffered damages as a result of that misrepresentation. (Candler Decl. ¶¶ 9-10.)

## II. GOOD CAUSE EXISTS FOR AN EXTENSION OF TIME WITHIN WHICH TO COMPLETE SERVICE OF PROCESS BY PUBLICATION.

Pursuant to Federal Rule of Civil Procedure 4(m), a plaintiff must effect service of process within 120 days of filing the complaint. If the plaintiff shows "good cause" for filing to serve process within that time, the Court "shall extend the time for service for an appropriate time." Fed. R. Civ. P. 4(m). "Relief may be justified, for example, if . . . the defendant is evading service . . ." Notes of the Advisory Committee on 1993 Amendments to Rule 4(m); *see also Hunter v. Oasis Fin. Solns., LLC*, No. 10cv724 L(WVG), 2010 U.S. Dist. LEXIS 86524, at *1 (S.D. Cal. Aug. 23, 2010) (granting extension of time); *Green v. United Steel Workers Int'l*, No. CV-07-5066-RHW, U.S. Dist. LEXIS 120943, at *4-5 (E.D. Wash. May 20, 2008) (granting extension of time where plaintiff claimed defendant was evading service).

The Complaint in this action was filed on October 7, 2013. As detailed above, Candler has been vigorously pursuing service ever since, including by (1) sending waivers of service to two Post Office box addresses associated with Defendant in two different states and to one physical address in California; (2) attempting to serve process on Defendant personally at three different physical addresses in California associated with Defendant; and (3) attempting to serve process on Defendant personally at a physical address associated with her in Tennessee; and (4) retaining the services of an investigator to locate Defendant. Despite these Herculean efforts, it appears that Defendant is aware of the pendency of this action and is evading service. The occupant(s) of the physical address most

-14-

closely associated with Defendant in San Luis Obispo, California, will not answer the door; and Defendant has directed her mail to be forwarded from that address to a Post Office box in Tennessee that leads to a dead end.

The time for Candler to complete service of process was initially scheduled to expire on February 4, 2014.  On January 7, 2014, after Candler filed a Status Report noting that she had yet to complete service of process, the Court *sua sponte* extended that deadline to February 21, 2014.  The Court's Order directed that on or before that date, Candler either file a proof of service or move for an order granting her permission to serve process by publication.  As Candler's continued efforts to serve Defendant have proved unsuccessful, and Defendant continues to evade service, good cause exists to extend the deadline to allow for service by publication.

Accordingly, Candler respectfully requests that the Court grant her 60 days from the date of the order granting permission for service by publication within which to serve process by publication.

Dated:  February 21, 2014                                     HARVEY SISKIND LLP
                                                                                            NAOMI JANE GRAY

                                                                              By:  _____/ s /_____
                                                                                    Naomi Jane Gray
                                                                                   Attorneys for Plaintiff
                                                                                  ASHLEY CANDLER

## PROOF OF SERVICE

The undersigned declares: I am a resident of the United States and am employed in the City and County of San Francisco, State of California; I am over the age of eighteen years and not a party to the within action; my business address is Four Embarcadero Center, 39th Floor, San Francisco, California 94111.

On the date below, I served the following documents:

- **EX PARTE APPLICATION FOR SERVICE BY PUBLICATIONAND EXTENSION OF TIME;**
- **DECLARATION OF ASHLEY CANDLER;**
- **DECLARATION OF NAOMI JANE GRAY;**
- **DECLARATION OF JEFF LANCASTER;**
- **DECLARATION OF KELLY MATTMULLER;**
- **DECLARATION OF NON-SERVICE BY CHRISTINA M. ROBERTSON;**
- **SUPPLEMENTAL DECLARATION OF NON-SERVICE BY CHRISTINA M. ROBERTSON;**
- **DECLARATION OF NON-SERVICE BY ROGER CLEMONS; and**
- **[PROPOSED] ORDER GRANTING EX PARTE APPLICATION FOR SERVICE BY PUBLICATION AND EXTENSION OF TIME**

by placing a true copy thereof enclosed in a sealed envelope and served in the manner described below to the interested parties herein and addressed to:

Shannon Carter
P.O. Box 3423
Lebanon, TN 37088-3423

__X__   **MAIL:** I caused such envelope(s) to be deposited in the mail at my business address, with postage thereon fully prepaid, addressed to the addressee(s) designated. I am readily familiar with the business practice of collecting and processing correspondence to be deposited with the United States Postal Service on that same day in the ordinary course of business.

__X__   **(FEDERAL):** I declare that I am employed in the office of a member of the bar of this court at whose direction the service was made.

Executed on February 21, 2014 at San Francisco, California.

*/s/ Dana Deleon*
Dana Deleon

EX PARTE APPLICATION FOR SERVICE BY PUBLICATION AND EXTENSION OF TIME
Case No: 13-cv-02072-LKK-CMK